279 F.3d 791
 Jose PEREZ-ARELLANO, Plaintiff-Appellant,
v.
Ronald J. SMITH,* District Director U.S. Immigration & Naturalization Service; John Ashcroft,** Attorney General of the United States, Defendants-Appellees.
 No. 00-35553.
 United States Court of Appeals, Ninth Circuit.
 Submitted January 9, 2002.***
 Filed February 1, 2002.
 Amended February 21, 2002.
 
 Brent W. Renison, Parker, Bush & Lane, P.C., Portland, Oregon, for the plaintiff-appellant.
 Craig J. Casey, Assistant United States Attorney, Portland, Oregon, for the defendants-appellees.
 Appeal from the United States District Court for the District of Oregon, Ancer L. Haggerty, District Judge, Presiding.
 Before: THOMAS, GRABER and GOULD, Circuit Judges.
 OPINION
 GOULD, Circuit Judge.
 
 
 1
 Jose Perez-Arellano appeals the district court's denial of his petition for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). His petition was filed after the district court granted the parties' joint motion for dismissal of Perez-Arellano's action, which sought review of the Immigration and Naturalization Service's ("INS") denial of his application for naturalization. The INS granted naturalization upon Perez-Arellano's re-submission of his naturalization application. Perez-Arellano contends that the district court erred in denying attorney's fees under the EAJA. He asserts that attorney's fees are warranted because the INS' position was not substantially justified. The district court rejected this claim, finding that the INS' position was substantially justified.
 
 
 2
 We affirm the district court's denial of attorney's fees, but on the ground that Perez-Arellano was not a "prevailing party."
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 Perez-Arellano first applied for naturalization in 1996, and the INS denied his application because he failed the necessary English-language test. In 1997 Perez-Arellano again applied for citizenship, but his application was denied for willful failure to reveal a prior arrest and conviction for driving under the influence of alcohol. The INS found that this false testimony given under oath barred the finding of good moral character that is necessary for naturalization.
 
 
 4
 On administrative appeal to the INS, Perez-Arellano argued that he had not intentionally lied during the INS interview. He pointed out that he had accurately reported that he had been deported in 1984, but at the time of interview did not recall the DUI that had occurred more than two decades earlier. The District Adjudications Officer requested that Perez-Arellano submit court-certified copies of his 1977 conviction for drunk driving. Perez-Arellano submitted that disposition to the INS. It indicated that Perez-Arellano was required to pay a $375 fine, to be paid at $40 per month. Perez-Arellano did not pay the fine until May 4, 1999, twenty-one years after the conviction and one week after his appeal hearing with the INS. The INS upheld the denial of naturalization on appeal, for lack of good moral character.
 
 
 5
 Perez-Arellano then filed an action in federal district court seeking de novo review of the INS' denial of his 1997 application. The parties filed a joint status report that proposed that the case be held in abeyance pending settlement discussions. The court agreed to do so. Perez-Arellano then re-submitted his application for naturalization, along with the same evidence that had been produced piecemeal by Perez-Arellano before the denial of his administrative appeal. This time the INS granted naturalization. The action in district court was dismissed based on a joint motion of counsel for the parties.
 
 
 6
 Perez-Arellano then filed a petition for EAJA fees and costs. See 28 U.S.C. § 2412(d). The district court denied the petition for fees, finding that the government had met its burden of showing that its position was substantially justified.
 
 
 7
 Perez-Arellano appeals.
 
 DISCUSSION
 
 8
 For the court to award attorney's fees and costs pursuant to the EAJA, it must be shown that (1) the plaintiff is the prevailing party; (2) the government has not met its burden of showing that its positions were substantially justified or that special circumstances make an award unjust; and (3) the requested attorney's fees and costs are reasonable. See 28 U.S.C. § 2412(d)(1)(A).
 
 
 9
 Although the parties do not address whether Perez-Arellano was a "prevailing party" for purposes of an award under the statute, a recent Supreme Court case calls into question Perez-Arellano's "prevailing party" status.[1] The United States Supreme Court's decision in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 1838, 149 L.Ed.2d 855 (2001), holds that a "party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has none-theless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" is not a "prevailing party" under federal statutes allowing courts to award attorney's fees and costs to the "prevailing party."
 
 
 10
 In Buckhannon, although interpreting statutes other than the EAJA, the Supreme Court repudiated the "catalyst theory"[2] for conferring prevailing-party status on a party seeking attorney's fees. The Court stated that "enforceable judgments on the merits and court-ordered consent decrees create the `material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." Buckhannon, 121 S.Ct. at 1840 (quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Thus the Supreme Court identified two judicial outcomes under which a party may be considered a "prevailing party" for the purpose of awarding attorney's fees: (1) an enforceable judgment on the merits; or (2) a settlement agreement enforceable through a court-ordered consent decree. Id. The former provides the necessary foundation for a plaintiff's status as a prevailing party because the plaintiff has received at least some relief based on the merits of the claim. Id. The latter is acceptable — even without an admission of liability — because it is a "court-ordered `chang[e] [in] the legal relationship'" between the parties. Id. (quoting Tex. State Teachers Ass'n, 489 U.S. at 792, 109 S.Ct. 1486).
 
 
 11
 The dispositive issue here is whether we should apply the same rule in interpreting the EAJA and resolving Perez-Arellano's dispute with the INS.
 
 
 12
 Although the Buckhannon case involves the fee-shifting provisions of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3613(c)(2), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12205, the Supreme Court's express rule of decision sweeps more broadly and its reasoning is persuasively applicable to an award of attorney's fees under the EAJA. In Buckhannon, the Supreme Court explicitly referred to "[n]umerous federal statutes [that] allow courts to award attorney's fees and costs to the `prevailing party,'" id. at 1838, and noted that it has consistently interpreted the nearly identical fee-shifting provisions of other statutes, such as the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), the Voting Rights Act Amendments of 1975, 42 U.S.C. § 1973l(e), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, id. at 1839. The Supreme Court did not expressly limit its interpretation of "prevailing party" to the FHAA, ADA, and those statutes listed as examples of similar text.
 
 
 13
 It might be argued that the Supreme Court's Buckhannon decision should be viewed as binding precedent only with respect to the statutes there in issue, the FHAA and the ADA, each of which provides attorney's fees for a "prevailing party" who makes a claim under it. Doubtless the same words in different statutes may have different meanings if a different intention of Congress is manifest in the purpose, history, and overall design or context of the statute. See Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932); Coupar v. United States Dep't of Labor, 105 F.3d 1263, 1266 n. 2 (9th Cir.1997). However, under the circumstances presented here, we discern no reason to interpret the EAJA inconsistently with the Supreme Court's interpretation of "prevailing party" in the FHAA and the ADA as explained in Buckhannon.[3]
 
 
 14
 We therefore hold that a "prevailing party" under the EAJA must be one who has gained by judgment or consent decree a "material alteration of the legal relationship of the parties."[4]
 
 
 15
 Buckhannon, 121 S.Ct. at 1840 (citations and internal quotation marks omitted).
 
 
 16
 Here, the parties did not litigate to judgment the initial federal court action seeking review of the INS' denial of Perez-Arellano's 1997 application for naturalization. The action was held in abeyance by the court upon agreement of counsel. During the period while the action was deferred, Perez-Arellano tried anew to obtain the benefit of naturalization at the administrative level by re-submitting an application to the INS. He was successful because the INS then voluntarily granted his application for naturalization. His change of status was the result of the INS' voluntary decision and was not compelled by the district court. The lawsuit was dismissed by the court upon joint motion of the parties. Consequently, although Perez-Arellano obtained his goal of naturalization, there was no enforceable judgment on the merits nor any enforceable settlement agreement.[5] Perez-Arellano unmistakably did not gain a change in his legal relationship with the INS by judgment or consent decree. Under the standard set in Buckhannon, and adopted by us as the rule of decision to interpret the term "prevailing party" in the EAJA, Perez-Arellano does not qualify as a "prevailing party" for purposes of an award of attorney's fees.
 
 
 17
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 Ronald J. Smith is substituted for his predecessor, David Beebe, as District Director of the U.S. Immigration and Naturalization Service. Fed. R.App. P. 43(c)(2)
 
 
 **
 John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the United States. Fed. R.App. P. 43(c)(2)
 
 
 ***
 This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2)
 
 
 [1]
 The Ninth Circuit may affirm the district court's decision to deny attorney's fees on any ground supported by the recordSee United States v. Soueiti, 154 F.3d 1018, 1019 (9th Cir.), amended by 162 F.3d 1035 (9th Cir.1998).
 
 
 [2]
 Under the "catalyst theory," "a plaintiff is a `prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."Buckhannon, 121 S.Ct. at 1838.
 
 
 [3]
 The Sixth Circuit has held that "[t]he legislative history of section 2412 indicates that Congress intended that `prevailing party' as used in the Equal Access to Justice Act be read consistently with its use in other feeshifting statutes."Heeren v. City of Jamestown, 39 F.3d 628, 631 (6th Cir.1994) (quoting Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid, 717 F.2d 964, 966 n. 2 (6th Cir.1983)).
 
 
 [4]
 The United States Court of Federal Claims inBrickwood Contractors, Inc. v. United States, 49 Fed. Cl. 738 (2001), interpreted "prevailing party" under the EAJA differently. Brickwood held that Buckhannon's rule was to apply only under the FHAA and ADA and other statutes the Supreme Court cited, but not under the EAJA because the Supreme Court did not mention the EAJA. Id. at 744. Brickwood interpreted the Supreme Court's listing of statutes as exhaustive. We disagree. The Supreme Court's reasoning is persuasive as applied to the EAJA. Moreover, the Supreme Court's recital of cases interpreting particular statutes is illustrative, not exhaustive.
 The court in Brickwood also noted the difference in the wording of the fee-shifting provisions of the FHAA and ADA from that of the fee-shifting provision of the EAJA. Id. at 745-46. The FHAA and ADA state that "the court ... may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 3613(c)(2) (emphasis added); 42 U.S.C. § 12205 (emphasis added). The EAJA states that "a court shall award to a prevailing party ... fees ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). This distinction makes no difference for the present purpose. All three statutes use the identical term, "prevailing party." There is no reason to assume this term has a different meaning simply because under the EAJA a "prevailing party" "shall" be awarded reasonable attorney's fees absent substantial justification for the government's position, whereas under the FHAA and ADA the court "may" award fees. The mandatory "shall," qualified by a discretionary condition, is comparable to using "may" to connote discretion.
 Brickwood further stated that the EAJA establishes a presumption that the prevailing party is entitled to attorney's fees unless the government's position was not "substantially justified." Brickwood, 49 Fed. Cl. at 746. The Brickwood court argued that this requirement allays concerns with permitting a plaintiff to attain "prevailing party" status based on a voluntary change in the defendant's conduct. Id. at 745-46. We see it differently. The difference in text between the fee-shifting provisions of the EAJA and the FHAA and ADA does not address at all the definition of "prevailing party." The requirement to show that a government action was not "substantially justified" does not affect a plaintiff's status as a "prevailing party," but is rather an added hurdle to be eligible for attorney's fees under the EAJA. The "substantially justified" requirement may make it more difficult for a "prevailing party" to obtain a fee award under the EAJA than under the FHAA or ADA, but increased difficulty does not justify changing the standard for determining whether an applicant is a "prevailing party."
 Brickwood is not persuasive to us, but we find persuasive instead the decisions of other courts that have given heed to the Supreme Court's reasoning and held that "prevailing party" under the EAJA must be interpreted with reference to Buckhannon. See Alcocer v. INS, No. 300CV2015-H, 2001 WL 1142807 (N.D.Tex. Sept.21, 2001) (applying Buckhannon "prevailing party" analysis to EAJA claim in determining plaintiff was not "prevailing party" where plaintiff's lawsuit was dismissed and plaintiff was voluntarily awarded benefit he sought); Thayer v. Principi, 15 Vet.App. 204 (2001) (applying Buckhannon "prevailing party" analysis to EAJA claim and denying attorney's fees where suit against Veteran's Administration ("VA") was dismissed as moot after VA voluntarily awarded plaintiff benefit he was seeking).
 
 
 [5]
 InBarrios v. Calif. Interscholastic Fed'n, 277 F.3d 1128 (9th Cir.2002), we recently addressed the relationship between an enforceable settlement agreement and prevailing party status for statutory attorney's fee award purposes. Because no settlement agreement is involved in this case, we need not address whether Perez-Arellano would qualify for prevailing party status under that theory.